IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

ARTIE ARMOUR, Applicant      §

V. §    CAUSE NO. _____

LORIE DAVIS, Director, Defendant §    **APPLICATION FOR WRIT OF HABEAS CORPUS**
                      §          **AND MEMORANDUM OF LAW**

TO THE HONORABLE JUDGE OF SAID COURT:

    COMES NOW ARTIE ARMOUS #326387, Applicant in pro se, and files this application for writ of habeas corpus pursuant to 28 U.S.C. §§ 2241 and 2254, and would show the Court the following:

I.

    Applicant is being illegally restrained of all manners of personnel liberty by Lorie Davis, acting in her official capacity as director of the Texas Department of Criminal Justice ("TDCJ"), pursunat to a conviction and sentence in cause number 76F0022-005A in the _19th_ Judicial District Court of Bowie County, Texas for the offense of Murder, and he is held at the Coffield Unit in Tennessee Colony, Texas.

**II.**

    This application for writ of habeas corpus is not to be construed as an attack on Applicant's criminal conviction and sentence. The Applicant is not challenging his criminal conviction, but is instead challenging the time neceassry to fulfill his sentence, and the 5th Circuit Court of Appeals has said that the duration of Applicant's confinement and applicable time-credit is a proper subject for a writ of habeas corpus. See Story v. Collins, 920 F.2d 1247 (5th Cir 1991). See Note 1. Applicant request this Court to hold him to a less stringent standard than the formal pleading drafted by an attorney and to liberally construe said pleading. See Bledsoe v. Johnson, 188 F.3d 250

**II-A.**

**FEDERAL EVIDENTIARY HEARING REQUESTED**

    Applicant state application was filed on _Aug. 31, 2018_ in Bowie County, TX. in Trial Cause no. 76F0022-005-A. There was no designation of issues, nor a hearing held in the trial court, Said application was received in the Texas Court of Criminal Appeals ("TCCA") on October 2, 2018, and assigned Cause No. WR-89,050-01, and denied without a written order on November 7, 2018, Thus, a hearing

( Page 1 of 22 Pages )

is needed and requested.

The State trial court, not the Texase Court of Criminal Appeals has ever designated issues and/or held a hearing, nor issued an opinion regarding this applicant. Therefore, the Applicant and this Court has no way of knowing what the TCCA is using as the foundation for its denial without a written order.  Evidentiary hearing is madnatory if the habeas applicant did not receive a full and fair hearing in state court. In a mandatory federal evidentiary hearing, it is the federal judge's duty to disregard the state findings. "The Miller Court observed, in a post-AEDPA case, that the denial of a full and fair hearing in state court still renders inoperative the statutory presumption of correctness." See Valdez v, Cockrell, 288 F.3d 702.

### III.
### STATEMENT OF FACTS

Applicant offense occurred on __12-23-1975__ during the __61st__ Legislature. Applicant was sentence to __Life__ on __1-22-1977__ during the __62nd__ Legislature. Applicant has been denied parole __24__ times.

TDCJ's breach of contract depriving Applicant of diligent participation work time, as well as applying laws to his sentence in violation of the EX POST FACTO Clause of the U.S. Constitution, and thus, continuing to confine Applicant after he has served his sentence as imposed by the trial court. Applicant has no detainer nor charges pending against him.

A contractual agreement was posed between TDCJ and Texas Prisoner as which means of payment they preferred. The Texas prisoners had the options of being paid money or WORK TIME CREDIT that served to reduce their sentence. The Texas prisoner chose the WORK-TIME CREDITS.

TDCJ not only failed to unhold its end of the contract, it has created laws to increase the prisoner's prison sentence. There is no MEANS for the prisoners to collect their incentive pay to reduce their sentence. Applicant's right to collect his entitled pay has been violated and he is forced to served a greater punishment.

Texas chose to create a compensation plan, Texas law and Bill of Rights mandated that the plan be administered equitally. No law exists that prevents or denies prisoners from being compensated for their labor. But if such a law did exist, under its current application that law would be inequitable and unconstitutional.

Applicant's request is for adequate compensation for labor performed but de-

prived him in violation of the Texas Constitution Art. 1 § 17--- a provision exp-
-ressly called for " Adequate Compensation" for a valued personed possession "App-
-ied to public use". Adequate compenstion in this case compensation on a equal to
those similarly situated with him under the law. "All laws made contrary to the
Texas Contitution are forever void". See Texas Constitution Art. 1 § 29.

IV.

( GROUND ONE )

Applicant is being deprived of his liberty without due process of law in vio-
-lation of the Fourtennth Amendment of the U.S. Constitution.

v.

( GROND TWO )

Applicant is being denied his property without proper compensation , in viol-
-ation of Article 1 § 17 of the Texas Constitution ; and Article 『 § 29 of the
Texas Constitution , as well as the Equal Protection Clause of the U.S. Constitu-
-tion.

VI.

( GROUND THREE )

Applicant's right to due process of law has been violted by TDCJ's Breach of
Contract in that it has failed to apply his WORK-TIME as FLAT-TIME-SERVED as means
to affectuate the binding contractual incentive pay (i.e. Diligent Purticipation
in the WORK-PLACE).

VII.

( GROUND FOUR )

The Applicaup of current Parole Release Laws violates the **EX POST FACTO** Clause
of the U.S  Constitution and Illegally Deprives  Applicant of his Liberty.

VIII.

( GROUND FIVE )

Applicant is Illegally Confined by a law that was not in effect at the Time

of the Commission of his Offense.

IX.

STANDARD OF REVIEW

When an Applicant Alleges a procedural due process violation , the standard of this Court is to review ; (1) whether TDCJ has interfered with Applicant's projected liberty interst ; and (2) whether precedural safe guards are constitut--ionally sufficient to protect against unjustified deprivation.- SeeColeman V. Dreike 385 F.d 216 at 221 ( 5th Cir. 2004).

X.

ARGUMENTS AND AUTHORITIES--

A.

Legislature Implementation and the Inapplicability of Good Conduct Time Credit.

Not only is Flat-time[2] Considered as "Actual Calendar time", it is also accre--dited as Good Conduct Time[3] credit ; See Tex. Gov. Code-508.142(b).[4] The award--ing of good conduct time only to eligibility for parole or mandory supervision and  does not other-wise affect an inmate's term. See Tex. Gov. Code-498.003(a), Thus , awarding of good time is fixed by Law. See Tex. Gov. Code-498.003(b).

B.

TDCJ Implementation and Applicaility of Work Time Credit.

Tex. Gov. Code-497.009(b) authorized TDCJ to implement an "Incentive Pay" for inmates who are required to work in agricultural , or either work programs. The incentive pay that TDCJ implemented is Work-Time Credit.[5] Unlike good-time that is awarded according to law , Work-Time Credit is awrded according to the Con-

[Foot Note] Black's Law Dictionary 8th Ed. defines the team Flit-time as:- "A prison term that is to be served without the benefit of time-reuction allances for good behavior and the like".
[Foot Note] Black's Law Dictionary 9th Ed. defines the term Good-time as:- "The credit awarded to a prisoner for good conduct which can reduce the duration of the prison sentence". Texas Legislature included the word-

-tract formed by TDCJ and an inmate. The type of contract formed is Implied".
"Texas Law recognizes implied conduct in which parties contract based upon thier
acts and conduct". See Hondo Oil and Gas Co. V. Crude Operator Inc. 970 F.2d 1433
(5th Cir. 1999). "For a contract to exist , there must be a valid considertion".

    See Harco Enery Inc. V. Re-Entry People Inc. 23 S.W. 3d 389 (Tex.App.-Amarillo
2000). Tex. Gov. Code-497.009(b) informs the inmate that TDCJ may offer an ince-
-ntive pay for them being required to work in agriclture , indestrial , or other
work programs. If an inmate accepts the offer by working and TDCJ thereby issue
a TIME SHEET to the inmate indicating WORK TIME Credit has been awarded thereof ,
not only is it evidence that consideration[6] has passed between the parties but it
is also evidence that a binding and enforceable Contract was formed. See Turner
Bass Associates of Tyler V. Willianson 932 S-W  2d 219 (Tex App  1996).

    An Implied Contract exists between TDCJ and Applicant whereby TDCJ has credit-
-ed Applicant with _____ years _____ months , and _____ days of Work-Time Credited
without Good-Time Consideration: See Exhibit "A"-Copy of Applicants Time-Sheet
attached here-to.

                                    C.

                    The two Components of Good-Time


    Applicant would first assert that the Parole Board , TDCJ and Court Officials
have consistently consolidated "Good-Time" into a single entity. Consolidation of
the phrase "Good-Time" in this manner has consistently in ruling that totally de-
-prive 3g-Offenders from all "Good-Time" benefits. (Specifically Offenders Convi-
-cted under C.C.P. Article 42.12 § 3g , herein after 3g).


_____

"conduct" in between good and time to emphasize its intent that acquiring of any
credit pertaining there to is based solely on the conduct of time.
    [Foot Note] 4. Good conduct time. Credit is compated for an inmate as if the
inmate were confined in the institutional division during the entire time the in-
-mate was actually confined. See Tex. Gov. Code-508.142(b).
    [Foot Note] 5. Work-Time is earned and it is defiened as "Credit to ward a sen-
-tence reduction awarded to a prisoner who takes part in activities designed to
lessen the chances that the prisoner will commit a crime after release from pris-
-on. Earned time , which is usually awarded for taking eductional or vocational
courses , working , or participating in certain other prodactive activities is
distinguished from good time awarded for simply restraining from misconduct. Bla-
=ck's Law Dictionary 4th Ed.
    [Foot Note] 6. The labor of Applicant and the awarding of Work-Time Credit by

TDCJ in the consideration mentioned herein-

1.

In reality there exists two (2) kinds of "Good-Time" under Texas Law. See Gov. Code 498.003 distinguishes between "CLASSIFICATION"-"Good-Time"and "DILIGENT PAR--TICIPATION" Good-Time.

2.

Increments of Good-Time allocated can vary under "CLASSIFICATION" Good-Time", from (0) .to (30) days for every 30-days actually served. Good-Time under"DILIGENT PARTICIPATION" remains constant for all prisoners at 15-days for every 30-days actually served.

3.

The reason for this is equity. The tacit admission in the configuration of this Law is that prisoner labor regarddless of classification states , is to be rewar--ded equitably. See Section (6) of Gov. Code-497.099 mandates that "In developing [INCENTIVE PAY SCALE] program , the Board shall set pay levels not to unjustly rewarded inmates , but rather to instruct inmates on the virtues of "DILIGENT PARTICIPATION" in the work place". This sentiment is echoed in See Gov. Code - 311.021(3) Intent Of Statutes which mandates that laws are designed to achieve a "just and reasonable result".

4.

In keeping with the equitable spirit of there Laws , TDCJ has implemented an "Incentive Pay Scale "Called" "DILIGENT PARTICIPATION" - GoodTime that compensates all prisoners equally "15-days for each 30-days actually served" regardless of classification statutes. The word "SHALL" imposes a duty on state to attain and maintain this equitable form of remaneration. See Gov. Code 311.016(2).

5.

The Parole Board , however completely denies 3g-Offenders any equitable compe--nsation for their labor by ignoring the dual nature of the "GOOD TIME LAWS".

D.

3g Offenders Entitlement To Goodtime

1.

The State may argue that under See Gov. Code 508.149(a) "An inmate may not be released to mandatory supervision if the inmate is serving a sentence for or has been previously convicted of a 3g-offense.

2.

However, See C.C.P. Article 37.07 § 4(c) says that a defendant who has been found guilty of a 3g offense "may earn time off the period of his incarceration imposed through the award of "Good-time."

3.

> C.C.P. Art. 37.07 Sec. 4(a) states in relevant part; Felony cases; penalty case in which punishment of the trial of a felony case in which punishment is to assessed by the jury rather than the court, if the offense of which the jury has found the defedant guilty is listed in Section 3g(a)(2), Art. 42.12 of this code or if the judgment contanis an affirmative finding under Section 3g(a)(2), Art. 42.12 of the code, unless the defendant has been convicted of a "CAPITAL FELONY" the Court shall charge the jury in writing as follows: "Under the law applicable in this case, the defendant, if sentence to a term of imprisonment, may earn time off the period of incarceration imposed through the award of good conduct time."

4.

It is worth noting that Texas Courts have, in the past, established the supremacy of C.C.P. Art. 37.07 over other laws.

> "Movreover, it has held that Article 37.12 comtrols over Article 42.12 in the event of conflict." SEE Gliven v. State, 918 S.W.2d 30, 33 (Tex. App. - Houston [lst Dist.] 1996). Also see Turcio v. State 791 S.W.2d 188, 191 (Tex.App.- Houston [14th Dist.] 1990). Also see Stweart v. State, 732 S.W.2d 398, 401 (Tex.App. - Houston [14th Dist'] 1987).

E.

EARNED GOOD TIME

1.

Notice that on Applicant's time-sheet, his good time earned 72 years 00 months and 6 days is nearly doubled his flat-time serve of 40 years, 10 months, and 20 days, and there is zero work-time. Yet there is 112 years, 10 months, and 26 days showing for mandatory supervision and parole time credits. The fact that the good time is nearly doubled indicates that both classification good time of 30 days for every 30 days and earned time of 15 days for each 30 days have been combined to deprive Applicant credit for his work-time. Thus, the reality is there exists two (2) kinds of **good-times.** Even with this calculation, Applicant has already completed the 60 years, life sentence imposed by the trial court.

( Page 7 of 22 Pages )

2.

According to Applicant's time sheet, both "Good-time and Work-time" are "EARNED". However, the primary difference is that "CLASSIFIACTION" Good-time is passive in nature. That is, all that is required to earn classification good time is stay out of trouble. Because many other benefits results from disciplinary free behavior, classification good time is not the sole motive for behaving.

3.

Work-time however, is active in nature. Labor is physically demanding and at times incurs physical injury. Also, refusal to work results in punishment.
Earned Work-time is not passive.

4.

Beginning with the presumption and long-standing precedent that prisons have a valid penological interest in employing inmate labor. See Mikesa v. Collins, 900 F.2d 833 (5th Cir 1990) legislature interest and conflicting language of the C.C.P. Art. 37.07 and Gov't Code 508.149(a) is properly determined by employing the custom-and-usage doctrine. It has long been the Texas custom to compensate prisoners for their labor.

5.

Texas created manual labor Laws early in its history to compensate prisoners for their labor. Since its inception, shortly after the Civil War, the Texas Constitution and Texas Legislature have always held that prisoner labor was to be assessed a specific value. Revised statute 1895 Article 3744 provided that a convict should not be required to labor for a longer time than would pay their fine and cost at fifty-cent (50¢) per day.

6.

In 1927, Article 6166x reinforced the idea of forced prison labor but maintained the stance that a prisoner labor had value. In this case a prisoner's first

( Page 8 of 22 Pages )

10-hours of work per-day was free  However , any over-time was rewarded by doubl-
-ing the over-time hours and deducting them from the sentence.

### 7.

In 1939 6166x was amended to read that every 10-hours of over-time would res-
-ult in having a day deducted from the prisoner's sentence.

### 8.

Just as in the County jail today , TDCJ's original labor laws were vested ,
meaning they were deducted from the prisoner's sentence. No parole or mandatory
super vision obligations attached to the original deductions. This practice con-
-tinued up until the 65th legislature which intiated a Mandtory Supervision poli-
-cy with respect to "WORK TIME" deductions.

### 9.

The 65th Legislature continued a "Good-time / Work-time Policy" which implim-
-ented A , B , C , credits and rewarded "DILIGENT PARTICIPATION" with time earned
toward early release and included 3g-offenders. It is at this point that the par-
-ole board , government entities , and even the Court began to "COMBINE" (and cl-
-oud) the distinction between  "CLASSIFICATION" - Good-time and "DILIGENT PARTIC-
-IPATION" - Good-time.

### 10.

A , B , c , "WORK-TIME" credits rewarded the acquiring one achievement natted
an "A" Status , Two natted a "B" Status , and Three achievement or more a "C" Sta-
-tus ( the lightest ). "CLASSIFICATION" "GOOD TIME" coupled A , B , C , credit in
varying degrees so prisoners earned different amounts of combined "GOOD-TIME/WORK-
-TIME" credit depending upon the extent of their "DILIGENT PARTICIPATION".

### 11.

After the 70th Legislature the distinction between Good-time and Work-time had
all but vanished as 3-g Offenders were declared ineligible for Mandatory Supervi-
-sion. It is at this point that the value of labor for 3-g Offenders completely vanished,
However , sanctioned punishment of 3-g Offenders for refusal to labor remained
in-tact. See Mikeska V. Collins 900 F.2d 833 at 837 (5th Cir  1990).

12.

"CONSTITUTIONAL INFRINGEMENT:  Article 1 § 17 of the Bill of Rights of the Te-
-xas Constitution holds in relevant part:

> "No person's property shall be taken , damaged or
> destroyed for or applied to public use without ad-
> -equate compensation being made , unless by the
> consent of such person "...

13.

There is no question that prisoners labor is applied to public use. Given the
"EQUITY" language of Article 1 , 17 of the Texas Constitution , Gov. Code 311.021
-(b) it is impossible to reconcile the discrepency that some priners labor have
value to the prison while other's do not.

14.

Consider the following analogy. Two prisoners work on the serving line the kit-
-chen , one serves peas on A-line , the other serves peas on B-line. The A-line
server is a 3-g Offender : the B-line server is not. The labor of both is of equal
to the penitentiary.

Both are equally punished if they refuse to work. Both run an equal risk of
injury when they do work (i.e. Burns , cuts , falls , etc.).

Yet the value of B-line worker counts toward mandatory release while the exact
same labor , with the exact same value and the exact same rick counts for nothing
for the 3-g Offender except as it pertains to punishment. His WORK (i.e. Diligent
Paraticipation) carries only negative personal value. This variance is inequitable
and contrary to the intent of all past legislative enactments , the present day
intent of Gov. Code 311.021(3) and 497.099(b) which mandate equitable treatment
and Article 1 , 17 of the Texas Constitution , which mandates adequate compensat-
-ion for  a valued personal possession applied for public use.

15.

Prisoner labor has value to both the prison , the public , and the Prisner.
It is unconstitutional under the "EQUAL PROTECTIONCLAUSE" of the U.S. Constitut-
-ion that one prisoner be remunerated for his or her labor , while another prison-
-er is not compensated for the exact same labor. To argue otherwise is to argue
that labor statutes were constructed in such away as to be purpasely Unconstitut-
-ional. That is an absurd results.

16.

IN PARI MATERIA AND LEGISLATIVE INTENT:

When read In Pari Materia (on like subject matter) Texas created manual labor LAws specifically to compensate its prisoners for their labor. C C.P. Art. 43.10 Manual Labor , reads in relevant part:

> "Where punishment assessed in a conviction ... is sentance to jail for a felony or is confined in jail after the conviction of a felony , the party shall be required to work in the county jail ind- -ustries program os shall be required to do manual labor in accordance with the previsions of this article under the following regulations:

17.

C.C.P. Art. 43.10 , 6 reads:

> "For each day of manual labor in addition to any other credits allowed by law a dendant "IS ENTI- -TLED TO" have one day deducted from each sente-- -nce he is serving. The deduction authorized by this Articl 42.10 of this code may not exceed two-thirds of the sentence".

18.

C.C.P. Art. 42.10 reads:

> "When a person is convicted "Of A Felony" and the punishment assessed is only a fine or a term in jail or both the judgement may be satisfied in the same manner as a conviction for a misdemeanor is satisfied". (Arts 1965 , 59th Leg. Vol.2 p 317 , ch.722).

19.

Texas Penal code 1 07(23) defines "Felony" as an offense so designated by Law or punishable by death or confinement in a penitentiary". That Felony offense and misdemeanors merit remuneration is clearly established in C.C.P. Art. 42.10 enac- -ted in 1965 by the 59th Legislature.

20.

The wording of C.C.P. Art. 43.10 did not include "Felony Offense" until the mid-1990's . This negates any argument that this Law is only intended for county jail offenders since No Law in the Texas Penal Code assesses county jail time for a felony convition: See figure 1.1 below:

## FIGURE 1.1

### Penal Code - 12.1:

(a) A person adjudged guilty of an offense under this code shall be punished in accordance with this chapter and the Code of Criminal Procedure.

### Penal Code - 12.03:

(1) Clas A misdemeanors _____
(2) Clas B misdemeanors _____   |_____   County Jurisdiction
(3) Clas C misdemeanors _____   |

### Penal Code - 12.04:

(1) Capital Felonies _____
(2) 1st degree Felonies _____   |
(3) 2nd degree Felonies _____   |_____   TDCJ Jurisdiction
(4) 3nd degree Felonies _____   |
(5) State Jail Felonies _____   |

Fact #1 - The use of the disjunctive "OR" in C.C.P. Art. 43.10 independantly establishes felony offenders as recipients of "WORK-TIME" entitlement provided by this Law.

Fact #2 - Fenoly convictions are always under the jurisdiction of TDCJ.

### CONCLUSION:

The entitlements to manual labor credits (WORK-TIME) proivded by C.C.P. Art. 43.10 extends to TDCJ - Offenders.

#### 21.

Therefore this wording is properly applied to inmates serving time in TDCJ facilities. The least serious felony covered in Penal Code 12.04 is a State Jail Felony , which carries a sentence from 180-days to 2-years. State Jail fall under the jurisdiction of TDCJ , which makes this LAw applicable to TDCJ prisoners. Even prisoners convicted of a fenoly , which are paroled from the county jail are only released after TDCJ sens the County a parole certificate and these prisoners are still required to report to parole officers.

WORK-TIME for fenoly prisoners serving in the County Jail is not vested as is the WORK-TIME for misdemeanors offenders.

## 22.

The wording of this law distinguishes between a prisoner's "Entitlement" to have one day deducted from his sentence for his or her labor and "any other credit allowed by Law". Time earned by WORK is an Entitlement. Other credit may not be denied by Law. Herein lies the distinction between Gov. Code 498.003(b) CLASSIFI-

-CATION. Good-Time and 498.003(d) DILIGENT - Good-time (i.e. Work-time).

## 23.

Gov. Code 311.016(4) defines the phase "ENTITLED TO" as a created or recogn-

-ized right. The phase ... a defendant (who works) is intitled to have one day de-

-ducted from each sentence he is serving" is plan and unabiquous a partys interpr-

-eation of the writing is immaterial. See Loftis V. Town Of Highland Pank 893 S.W. 2d 154 at 156 (Tex. App.-Eastland 1995).

## 24.

Both State and Federal Court have been clear on this issue-Labor credits (wo-

-rk-Time) are describedin this Law as an "ENTITLEMENT" and as such carry with it a due process interest.

## 25.

"In order to assert a violation of this ( due process ) amendment , one must at least demonstrate the deprivation of a protected property interest established through some independent source such as State Law.

The nature of this proprty interest therefore must be determined by Texas Law. Under this anqlsis , the hall mark of property...is an individual entitlement grounded in State Law which can not be removed excent for cause". See Simi Inv.Co Inc. V. Harry County 236 F.3d 240 at 250 (5th Cir. 2000).

## 26.

A State must adhere to any entitlement it credits for the benefit of its pri-

-soners and those prisoners have a liberty in Sate-Credited Entitlements. See Greenholtz V. Inmates 99 S.Ct. 2100.

27.

Texas was not required to create a plan to compensate prisoners for their lab-
-or. But when it freeely chose to create a compensation plan , Texas Law and Bill
of Rights mandated that the plan be administered equitably. No Law exists that
prevents or denies prisoners from being compensated for their labor. But if such
a Law did exist , under its current application that Law would be inequitable and
Unconstitutional.

28.

Under the most technical inter pretation , "CLASSIFICATION". Godd-time may be
considered grace , But "WORK-TIME" is earned by labor. It is "NOT GRACE"! Fialure
to work invokes punitive sanction and at times the earning of "WORK-TIME" invokes
physical injury to the worker.

29.

Gov. Code 497.099(a) mandates that "The Department Shall Require Each Inmate...
To Work..."The word "SHALL" is mandatory and imposes a duty. See Gov. Code 311.
016(2) thus , every prisoner has a duty to work to the extent he or she is able.

30.

When a prisoner is denied equal compensation for his or her labor as other sim-
-ilary situated prisoners with him or her under the Law , are compensated that
prisoner should not be required to subject himself or herself to that risk.

31.

When work or failure to work incurs equal negative conicquences (i.e. injury
or punishment) then the legal requirement to work should also guarantes equal
compensation.

32.

Applicants claims are not claims for general relief in the blanket application
of all credits under the general Good-time category. Applicants claims are for
equitable relief based on the specific and singular subject of labor credit con-
tained "WITHIN" the Good-time Statutes (i.e.WORK-TIME).-See EXhibt (A) Applicants
"TIME-SHEET".

33.

Applicants request is for adequate compensation for the labor performed but

deprived him in violation of Texas Constitution Art. 1 , 17 a provision expressly
calling for adequate compensation for a valued personal possession , applied to
public use. Adequate compensation in this case is compensation on a scale equal
to those similarly situated with him under the Law.

### 34.

Applicant has not been sentenced to legal deprivation of equitable compensat-
-ion and he asserts the right to such compensation because he has been compelled
to labor by the defendant under penalty of punishment that would adversely affect
his chances of making parole and at the risk of personal injury.

The specific wording of C.C.P. Art. 37.09 the equity language of Gov. Codes
311.021(3) and 497.099(6) and the adequate compensation language of Articl 1 , 17
of Texas Constitution are definitive and authoritive.

### 35.

Futher-more , the more protective right of the TexasConstitution prahibts any
deviation from or trangression of its Bill of Rights.

> "To guard against transgressors of the high powers
> herein delegated , we declare that everything in this
> Bill of Rights is excerpted out of the general powers
> of government , and shall forever remain in violate ,
> and all Laws made contrary there to , or to the foll-
> -owing provisions , "SHALL BE VIOD".
> Texas Constitution Article 1 , 29.

### 36.

Applicant has entered into a binding contract , which TDCJ refuses to honor by
withOholding his "WORK-TIME". Applicant's time-sheet is evidence of the implied
contractual agreement. TDCJ is contractually obligated to substract said "WORK-
-TIME" credit earned by Applicant from his (60yr) Life sentence. The addition of
Applicant's Flat-time and "WORK-TIME" equates to ___60___ years ___10___ months
and ___26___ days , which is ___00___ years ___10___ months and ___26___ days pass
Applicant's (60yr Life) sentence. Texas Law recognizes implied contract in which par-
-ties form contract based upon their acts and conduct. See Hondo Oil V. Crude Ope-
-rator Inc. 970 F.2d 1433 (5th Cir. 1994). The judgement by the Trial Court regar-
-ding cause number 96F0022-005A _____ , created the liberty interest because it
orders TDCJ to confine Applicant until the (60yrs) Life _____ sentence cease tooperate
Said sentence cease to operate when the actual calendar time served equals the sen-
-tence imposed by the Court. See EX PARTE Ruthart 980 S.W. 2d 464 at 474 (Tex.Crim.
App. 1998).

Applicant's WORK-TIME credit is actual calendar time , therefore , the restr-
-iction or deprivation thereof affects the duration of Applicant's sentence.

Here , Applicant's work-time should be afforded the due process protection: ૪
See Thompson V. Cockrell 263 F.3d 423 at 427 (5th Cir. 2001).

Thus Applicant is due compensation amount of __oo__ years __10__ mounth
and __16__ days as of __12-13-17__ , and Applicant should be released immed-
-intely , because his Flat-time and Work-time exceed the _(60yrs) Life_ sentence
imposed by the Trial Court.

F.

EX POST FACTO INFRINGMENT

1.

Applicant has served over (100%) one hundred percent of his sentence with the
lawful consideration of his Flat-time , Good-time , and Work-time credits : but
the Texas Board of Pardens and Parole (The Board) ahs denied his release by appl-
-ying current Mandatory Supervision laws to his caseLaw that were not enacted at
the time of the commission of the current Offense , which has become detrimental
to Applicant by increasing the length of his incarceration. See Lynce V. Mathis
519 U.S. 433 1997) [Art. Sec. 10 U.S. Const.] "no State shall pass any ex post
facto law". Justice stone explained ; the Constitution prohibition and the judi-
-cial interpretation of it rest upon the nation that Laws : whatever their form,
which purport to make innocent acts criminal after the event or to aggravate an
offense and oppressive or the criminal quality attributed to an act , either by
the legal defenition of the offense or by the nature or anount of punishment im-
-posed for its commission./.should not be attered by legislative enactment after
the fact to the disadvantage of the accused. See Leavzell V. Ohio 269 U.S. 1671
(1925) I.D. at 170.

2.

The Board is currently applying enacted Section 508.149 and 508.283 of the Te-
-xas Government Code , which authorizes the Board to act discretionary in releas-
-ing the Applicant to Mandatory Suervision.

The action by the Board in denying Applicant release is an "UNLAWFUL" applica-
-tion of the Law in violation of the EX PAST FACTO clause section 508.283 of the
Texas Government Code did not exist of the time Applicant committied the offense
nor at the time he was convicted and sentenced.

American Jurisprudence clearly establishes that...the law current at the time

of the commission of the act is what applies to the case. Any law that was not an intergral part of the Applicant's punishment to be applied nearly 3-decades later is clearly a violation of the U.S. Constitution Protection under Article. 1 , se--ction 10 See Lynce 519 U.S. 446-67.

Applicant was convicted under the 64th Legislature , which clearly applies Articl 42.18 of the Texas Code of Criminal Procedure to release him on Mandatory Supervision , which uses the Mandatory Language "SHALL BE RELEASED" in determin--ing when his actual Flat-time , Good-time , and Work-time credits equal his full sentense. This law was replaced by the 74th Legislature in 1997.

## 3.

However , this change should-not and can-not be applied to Applicant. To fall within the "EX PAST FACTO" prohibition , a law must be retraspective : that is it must apply to events accuring before its enactment. Must disadvantage the offend--er affected by it altering the definition of Criminal Conduct or Increasing the punishment for the crime. See Weaver V. Graham 450 U.S. 2450 (1981) , Citing See YoungBlood 497 U.S. 30-50 (1990). Ignoring the 64th Legislature's Law has pro--longed Applicant's incarceration. See Garne V. Jones 629 U.S. 244-255.

## 4.

The mandatory language of release enacted by Article 42.18 C.C.P. credit a li--berty and lawful expectation of release to Mandatory Supervision as said law gov--erns Applicant's conviction. See Greenholz V. Nebraska 442 U.S. 1 , 11-12 (1979) to deny Applicant his Mandatoey release deprives him of his constitutional right to be free from cruel and unusal punishment in violation of the 8th Amendment.

## 5.

The newly enacted laws are "DISCRETIONARY" in nature. Id Garner , but the law in effect at the time of the commision of the offense is not discretionary at all. Retroactive alteration of Parole or Early Release provision , as applied to Appl--icantimplicates the EX POST FACTO clause , and effectively alters the Applicants sentence as well as his punishment.

## 6.

The Laws that aply to this issue are well settled by the United States Supreme Court and addressing them in lengthy detail be cumbersome and redundant. Applica--nt submits that under the law in exisitance at the time of the commision of his offense , the 64th Legislature Mandated that once he -

served one-hundred percent (100%) of his sentence with consideration of his Flat-
-time , Good-time and Work-time credits that he "SHALL" be released on parole to
Mandatory Supervision.

7.

Applicant has now served one-hundred percent of his sentence according to the
Board's Record's. See Exhibit (A)(Applicant's Time-Sheet) when Mandatory Language
exists , such as where the statute provides that the "BOARD SHALL" release an of-
-fender if certain conditions are met.

Applicant had a legitimate expection of Mandatory Supervision a liberty inter-
-est when he was sentenced which can=not be arbitrarily denied without due process

See Greenholtz442 U.S. 1 , 11-12. The _6th_ Texas legislature clearly created
a liberty interest and expectation to be releases to mandatory supervivsion when
it used the mandatory language in Article 42.18 C.C.P. , Thus , Applicant should
have been released years ago.

8.

Applicant would show that the term of his confinment is governed by the provi-
-sion of Article 42.12 Section 15(6)and (c) , Texas Code of Criminal Procetive
Aug. 29 , 1997 , Although this Article has been subsequently modified and redone
as section 508.144 of the Tex: Code.

Applicant's imprisonment is governed by the Law ineffect at the Time of the
Commission of the Offense.

A) Article 42.12 section 15 Tex. Code Crim. Pro.(C.C.P.) States:

"Section 15(a) The Board is authorized to release on parole , with approval
of the Governor , any person confined in any penal or correctional institution of
the State who is eligible for parole under subsection (b) of the section.

The period of parole shall be equilvalent to the maximum term for which the
prisoner was sentenced less calendar time actually served on the senence. All
paroles shall issue upon the order of the Board , duly adopted and approved by
the Governor.

B) A prisoner under sence of death is not aligible for parole. If a Prisoner
is serving a sentence for the Offense listed in Section 3-f(a)(1) of this Article
or if the judgement contains an affirmative finding under section3(f)(a)(2) of
this Article he is not eligible for parole until his actual calendar time served
without-

- consideration of good conduct time equal one-third of the a maximum sentence or 20-calendar years whichever is less , but in no event shall he be eligible for release on parole in less than two calendar years. All other prisoners "SHALL" be eligible for release on parole when their calndar time served plus good conduct time one-third of their maximum sentenceimposed or 20-years whichever is less.

C) Aprisoner who is not released on parole except a person under sentence of death "SHALL" be released to Mandatory Supervision by order of the Board when the calendar time served plus any accrued good conduct time equals the maximum term to which he was sentenced.

A person released to mandatory supervision shall upon released , be deemed as if released to parole. To the extent practible arrangement's  for the prisoner's proper employment maintenance and care shall be made prior to his release to Man- -datory Supervision .

The period of mandatory supervision shall be for a period equivalent to the maximum term for which the prisoner was sentenced. Yhe time served on Mandatory Supervision is calculated on calendar time. Every prisoner while on Manditory Supervision shall remain in the legal custody of the institution from which he was release but shall be amendable to the orders of the Board".

9.

Applicant who is not under a sentence of death is therefore eligible for rele- -ase on parole or mandatory supervision under the provision set out in subsection 15(b) and (c) set out above. For parole purposes , Applicant's life sentence is treated as the equivalent of a (60) sixty-year sentence. This has been the histo- -ric case in Texas and is in line with the above in that Applicant became eligi- -ble for parole after completing one-third of his sentence which computes to 20- -years.

10.

If an inmate was sentence to a term of life or a term in excess of sixty (60) years , the inmate is not considered eligible for parole until they have served either one-third of the sentence or 20-calendar years , whichever comes first.

This rule essentially makes all in excess of sixty years , for the purpose of eligibility determinations , a sixty year sentence. SeeThe Vioce For The Defense Vol. 25 , No.8 , Oct. 1996 (by Bill Habern and Gary J. Cohen) cited from staff Counsel For Offenders Legal Handbook Seventh Edition , Texas Department of Crim- -inal Justice- Janary 1999.

11.

The Texas Legislature has consistantly drafted law that equates a Life-sentence to (60) sixty years. If the Legislature had not interested the (60) years minimum to apply to Mandatory Supervision as well as parole there would be some indica--tion in the statute itself or in the Legislative history. Become there is not because  the history of this statute the courts must condude that the Legislaure intented to apply to prisoners serving a life sentence the same as 60 years max--imum for release under mandatory supervision. See EX PARTE Franks 71 S.W. 3d 327 at 329 (Tex.Crim.App.-2001).

Through 3-Legislature drafts Article 42.12 has consisteatly set 60-years to equal a life sentence:

> 1.) 69th Legislature Dated: Before September 1,1987 one-third Law See Article 42.12 . 15 C.C.P. twenty years = Flat-time + Good-time = Parole Eligibility
>
> 2.) 70th Legislature DAte: 9-1-87 thus 8-31-92 fif--teen years = Flat-time + Good-time = Parole Eligi--bility .
>
> 3) 73nd Legislature Dated: 9-1-93 thru 8-31-95 one--half law.

Thirty year = Flat-time + Good-time = Parole Eligibility The above Legislative requirements of the maximum sentence imposed to be eligible for parole on a life sentence equates 60- years. Under the current Legislature to date the one-half *law* imposes a 30-year maximun parole eligibilty.

12.

Since Applicants judgement contained an affirmative finding set out in section (f)(a)(2) of Article 42.12 , Applicant would be required to serve 20-calendar years before being eligible for release on parole. See Exhibit (A) attached here--to is a copy of Applicants Time-sheet as of _12-13-17_ and shows TDCJ cal--clulated date of _1-22-84_ for parole eligibility. This coincides with the _20_ calendar years date of Applicant's arrest for the offense.

Applicant would also piont out that Exhibit (A) shows Applicant to be Mandat--ory Supervision prospect with total Mandatory Supervision credit _11_ years _10_ months and _26_ days. This would agree with requirement of Article 42.12 Section 15(c)- C.C.P. , which excludes only those under sentence of death from eligibility for release to Mandatory Supervision. See EX PARTE Franks 71 S.W. 3d 327 at 329 (Tex.Crim.App.2001). See Also Govan V. Johnson Civil Action

No. 1:97-CV-241-C.

13.

Applicant has been considered for release on parole  24  times , and denied on each occasion. The denials are not contested here , but the failure of the Board to release Applicant to Mandatory Supervision is ; there can be no question Concerning Applicant's eligibility for release on Mandatory Supervision. The Lan--guage of C.C.P. Article 42.12 Section 15(c) is mandatory. It states that any pri--soner not under sentence of death "SHALL" be released to Mandatory Supervision if they are not released to parole[SEE FOOT NOTE 7] .

14.

Life is not a numerical number. Applicant submits that the same creditia used for parole eligilibity should apply for Mandatory Supervision release as well.

Applicant asserts that using the term of 60-years as the criteria for determin--ing a Mandatory Supervision release date is a logical extention of the states historic treatment of Article 42.12 Section 15 C.C.P. (e.g.42.18 Section) as each of these uses the 60-years term as a bench-mark for determining parole eligibility with the Legislative and Judicial systems in Texasholding the Mandatory Supervi--sion and parole are equivalent for all intents and purpose , it would be illog--ical to use any other number.

15.

As stated above , Exhibit (A) shows that Applicant has Mandatory Supervision Time Credits equaling  112  years  10  month and  26  days as of the date of  12-13-17  , 2017 . Applicant's inmate status is that of a state approved trust class III , which means Applicant is drawing the maxi--mum time allowed (three days for each day served , plus additional educational time credits). By back-tracking from there can determine that Applicant had acc--umlated 60-years time credit in  2001  . Accordingly , having been tur--ned down for release on parole  24  times , the Board should have set Appli--cant Mandatory Supervision release date when he accumulated 60-years time credit.

[Foot Note 7] Applicant would ask the Court to take Judicial Notice of the ruling in Govan V. Johnson Civil Action No. 1:97-CV-241-C in the U.S. District Court for the Northern District of Texas , Abilene Division , the release parts which are attached as See Exhibit (B) , which was issued July 20 , 1998. While this was an unpublished opinion , it clearly states the law and further makes the piont that the Director of TDCJ , Acknowledge that Govan was entitled to a Mandatory Super--vission release date on his life sentence. While the court put a caveat on that that he is not entitled to one until he had served at least 20-calendar years. This does not apply to Applicant because he has alread served  40  calendar years. See Exhibit (A) Time-Sheet.

## PRAYER

WHEREFORE , PREMISES CONSIDERED , Applicant prays this Honorable Court grant
a favorable ruling on his claims of equity with respect to "WORKTIME" compensat-
ion Entillements , a Mandatory Supervision Date , what other relief he is justly
entitled to , issue a Writ of Habeas Corpus for his immediate release being that
his "FLATTIME" and "WORKTIME" equates to , and exceeds the sentence imposed by
the Trial Court.

FOR SUCH I PRAY.


                                        Respectfully Submitted


                                        _Artie Armour_
                                        Applicant - Pro Se


### UNSWORN DECLARTION

I, _Artie Armour_ , #_326387_ , do
hereby declare under penalty of perjury , pursuant to 28 U.S.C. 1746
that the above and foregoing facts are true and correct to the best
of my knowledge and ability to present them.

Executed this day _Jan. 30,_ , 20 _19_ .


                                        _Artie Armour_
                                        Applicant - Pro Se


### CERTIFICATE OF SERVICE

I , _Artie Armour_ , #_326387_ , do
hereby declare that on this day _Jan. 30_ , 20 _19_ ; pursuant to
28 U.S.C. 1746 Caldwell V. Amend 30 F.3d 1199 and under the penalty of purjury
that I have served the Defendnat with the foregoing Applicant For Writ Of Habeas
Corpus and Menorandum of Law , by placing the Original and (1) one copy in a sea-
-led envelope addressed to the Clerk of the U.S. District Court-Eastern Division
Tyler 211 West Ferguson Street , Tyler , Texas 75702 and placing the correct pos-
-tage on it for the U.S. Mail.


                                        _Artie Armour_
                                        Applicant Pro Se

Exhibit A

Armour's Time-Sheet
Belton's Time-Sheet  Comparison

```
        T. D. C. J.   -   I N S T I T U T I O N A L   D I V I S I O N
        DATE 12/13/17          RECORDS OFFICE            TIME 08:48:47
TDCJID: 00326387 NAME: ARMOUR, ARTIS                     UNIT COFFIELD
SENT. BEGIN DATE 01/22/1977 TDC RECEIVE DATE 10/23/1981
INMATE STATUS STATE APPROVED TRUSTY CLASS III B    LAST PCR REQUEST 12/13/17

    SENT. OF RECORD    LIFE                                MAND SUPV PAROLE
    FLAT TIME SERVED         00040 YRS 10 MOS 20 DAYS      000  %   000  %
    GOOD TIME EARNED         00072 YRS 00 MOS 06 DAYS      000  %   000  %
    WORK TIME EARNED         00000 YRS 00 MOS 00 DAYS      000  %   000  %
    MAND SUPV TIME CREDITS   00112 YRS 10 MOS 26 DAYS      000  %
    PAROLE TIME CREDITS      00112 YRS 10 MOS 26 DAYS                000  %
    MINIMUM EXPIRATION DTE: 01/01/9999
    MAXIMUM EXPIRATION DTE: 01/01/9999


JAIL GOOD TIME RECD YES            NUMBER OF DETAINERS 01
GOOD TIME LOST 00000 DAYS          WORK TIME LOST 00000 DAYS
PAROLE STATUS    BPP DATE                      TDC CALC DATE 01/22/1984



REQUEST _____
CONDUCT RECORD:
```

SID #2182857

```
        T. D. C. J.    -   I N S T I T U T I O N A L   D I V I S I O N
          DATE 12/18/17         RECORDS OFFICE          TIME 08:46:54
TDCJID: 01517923 NAME: ALLEN,BELTON                      UNIT COFFIELD
SENT. BEGIN DATE 08/17/2007 TDC RECEIVE DATE 08/12/2008
INMATE STATUS STATE APPROVED TRUSTY CLASS III W      LAST PCR REQUEST 12/18/17

     SENT. OF RECORD         00015     YRS 00 MOS 00 DAYS    MAND SUPV PAROLE
     FLAT TIME SERVED         00010 YRS 04 MOS 02 DAYS    068  %    068  %
     GOOD TIME EARNED         00008 YRS 09 MOS 27 DAYS    000  %    058  %
     WORK TIME EARNED         00005 YRS 01 MOS 06 DAYS    000  %    034  %
     MAND SUPV TIME CREDITS   00010 YRS 04 MOS 02 DAYS    068  %
     PAROLE TIME CREDITS      00024 YRS 03 MOS 05 DAYS              160  %
     MINIMUM EXPIRATION DTE: 08/16/2022
     MAXIMUM EXPIRATION DTE: 08/16/2022

JAIL GOOD TIME RECD YES            NUMBER OF DETAINERS 00
GOOD TIME LOST 00060 DAYS          WORK TIME LOST 00000 DAYS
PAROLE STATUS   BPP DATE                        TDC CALC DATE 02/15/2015

*CALC PAROLE ELIG ON CALENDAR TIME


REQUEST _____
CONDUCT RECORD:
```

Flat-Time = 10yrs 4-Mos 2-days
Work-Time = 5yrs 1-Mos 28-days
Total-Time = 15yrs 5-Mos 28-days