IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| ARTIE ARMOUR, #326387 | § | |
| VS. | § | CIVIL ACTION NO. 6:19cv41 |
| DIRECTOR, TDCJ-CID | § | |

REPORT AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE

Plaintiff Artie Armour, a prisoner confined at the Coffield Unit within the Texas Department of Criminal Justice (TDCJ), proceeding *pro se*, filed this habeas petition complaining that he is being illegally detained. The case was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and (3) as well as the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges.

**I. Procedural History**

Armour is serving a life sentence for one count of capital murder.  He was originally sentenced in 1976 to death, but his death sentence was commuted to life in 1981.  Armour filed a direct appeal, of which the appellate court affirmed his conviction.  He then filed a state application for habeas corpus, which the Texas Court of Criminal Appeals (TCCA) denied without written order in 2018.  Armour then filed this instant federal habeas petition on January 30, 2019, (Dkt. #1).

**II. Armour's Federal Habeas Petition**

In his petition, Armour raises four claims.  He first maintains that TDCJ is depriving him of his acquired work-time credits and, therefore, continues to confine him after he has served his sentence.  Armour contends that he has 112 years credited to his sentence.  Second, he insists that

1

TDCJ breached its contract, as prisoners chose work-time credits rather than money for work performed.

Next, Armour argues that he has served over 100% of his sentence with "lawful consideration of his flat-time, good-time credits, but the Texas Board of Pardons and Paroles has denied his release by applying current mandatory supervision laws to the case laws that were not enacted" at the time of his offense.

Throughout his attached memorandum of law, Armour stresses that a "contractual agreement was posed between TDCJ and Texas prisoner[s] as which means of payment they preferred. The Texas prisoners [sic] the options of being paid money or work[-]time credits that served to reduce their sentence. The Texas prisoner chose the work-time credits." (Dkt. #1, pg. id. #12). He further notes that he has been denied parole twenty-four times. Armour also asserts that he should be released from prison immediately because his flat-time and work-time credits exceed the sentence imposed.

## III.  Legal Standards

The role of federal courts in reviewing habeas petitions filed by state prisoners is exceedingly narrow. A prisoner seeking federal habeas corpus review must assert a violation of a federal constitutional right; federal relief is unavailable to correct errors of state constitutional, statutory, or procedural law unless a federal issue is also present. *See Lowery v. Collins*, 988 F.2d 1364, 1367 (5th Cir. 1993); *see also Estelle v. McGuire*, 503 F.3d 408, 413 (5th Cir. 2007) ("We first note that 'federal habeas corpus relief does not lie for errors of state law.'") (internal citation omitted). When reviewing state proceedings, a federal court will not act as a "super state supreme court" to review error under state law. *Wood v. Quarterman*, 503 F.3d 408, 414 (5th Cir. 2007).

Furthermore, federal habeas review of state court proceedings is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996.  Under the AEDPA, which imposed several habeas corpus reforms, a petitioner who is in custody "pursuant to the judgment of a State court" is not entitled to federal habeas relief with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established law, as determined by the Supreme Court of the United States; or
> 2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).  The AEDPA imposes a "highly deferential standard for evaluating state court rulings," which demands that federal courts give state court decisions "the benefit of the doubt."  *See Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations omitted); *see also Cardenas v. Stephens*, 820 F.3d 197, 201-02 (5th Cir. 2016) ("Federal review under the AEDPA is therefore highly deferential: The question is not whether we, in our independent judgment, believe that the state court reached the wrong result.  Rather, we ask only whether the state court's judgment was so obviously incorrect as to be an objectively unreasonable resolution of the claim.").  Given the high deferential standard, a state court's findings of fact are entitled to a presumption of correctness and a petitioner can only overcome that burden through clear and convincing evidence.  *Reed v. Quarterman*, 504 F.3d 465, 490 (5th Cir. 2007).

## IV. Discussion and Analysis

Armour's federal habeas petition should be denied.  Essentially, Armour is arguing that he has served more than his criminal sentence because he has accrued at least 112 years to his sentence through work-time and flat-time, but, yet, he keeps being denied parole.  He also seems to take issue with TDCJ's requirement that prisoners work for no money or face disciplinary proceedings.

3

### A. Mandatory Supervision

The primary consideration in this case is whether Armour has stated or presented the denial of a constitutionally protected liberty interest.  He has not.  "Federal habeas relief cannot be had 'absent the allegation by a plaintiff that he or she has been deprived of some right secured to him or her by the United States Constitution or the laws of the United States.'" *Malchi v. Thaler*, 211 F.3d 953, 957 (5th Cir. 2000) (quoting *Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995)).  The procedural protections of the due process clause are triggered only when there has been a deprivation of life, liberty, or property; because neither Petitioner's life nor property interests are at stake—particularly because his chief complaint is that his TDCJ will not release him even with all his credits—the pertinent question here is "whether he had a liberty interest that the prison action implicated or infringed."  *Toney v. Owens*, 779 F.3d 330, 336 (5th Cir. 2015); *Richardson v. Joslin*, 501 F.3d 415, 418-19 (5th Cir. 2007).

Work-time credits and good-time credits relate to potential release on parole or mandatory supervision.  Under certain circumstances, the loss of good time could inflict punishment imposing an atypical and significant hardship upon an inmate—because the loss of such time could result in the denial of a liberty interest in early release from prison.  This condition exists where an inmate is eligible for release on mandatory supervision.  *See Madison v. Parker*, 104 F.3d 765,  768 (5th Cir. 1997).  In other words, there is no protected liberty interest in previously earned good-time credits when an inmate is **not** eligible for mandatory supervision.  *See Stewart v. Crain*, 308 F. App'x 748, 750, 2009 WL 166700 *2 (5th Cir. 2009) ("Because Stewart is ineligible for early release under the Texas mandatory supervision scheme, he has no constitutional protected liberty interest in previously earned good-time credits.").

4

Texas had not established its mandatory supervision statute at the time of Armour's conviction and sentence in 1976.  *See Christopher v. State*, 2008 WL 5423236 *6 (Tex. App.—Austin, Dec. 31, 2008) ("The record reflects that Christopher committed the offense of indecency by contact sometime before May 1977, and Christopher stated in his petition that the pre-1977 law should apply.  Thus, at the time Christopher committed the offense, there were no mandatory supervision provisions in place.").  Accordingly, based on Armour's sentence date, the mandatory supervision statute was not in effect.

To the extent that Armour argues that he should receive the benefit of the 1977 statute providing for mandatory supervision, the Court notes that this argument is likewise without merit. The 1977 statute provided that prisoners not sentenced to death were eligible for release on mandatory supervision when the prisoner's actual calendar time plus good conduct time equals "the maximum term to which the inmate was sentenced."  *See* Act of May 30, 1977, 65th Leg., R.S., ch. 347, §15(c), Tex. Gen. Laws 925, 927-28; Article 42.12, sec. 15(c), V.A.C.C.P. (West 1981).  The Texas Court of Criminal Appeals subsequently held that "under a literal reading of this law, it is mathematically impossible to determine a mandatory supervision release date on a life sentence because the calendar time served plus any good conduct time will never add up to life."  *See Ex Parte Franks*, 71 S.W.3d 327, 328 (Tex.Crim.App. 2001).  As a result, prisoners with life sentences are ineligible for mandatory supervision.  The court declined to perform the legislative function of arbitrarily substituting a specific number of years for a life sentence to make it possible to calculate a release date.  *Id*. ("This Court would arbitrarily have to substitute some number of years for a life sentence to make it possible to calculate a mandatory supervision release date.  This is the Legislature's job.").

The Fifth Circuit Court of Appeals subsequently followed the *Franks* decision in *Arnold v. Cockrell*, 306 F.3d 277, 279 (5th Cir. 2002) (per curiam).  There, the habeas petitioner was sentenced to life imprisonment in 1978 and argued that he was entitled to mandatory supervision. *Arnold*, 306 F.3d at 278.  The Fifth Circuit noted that the statute at issue when Arnold was sentenced—the 1977 version of the statute—explained that a "prisoner who is not on parole, except a person under sentence of death, shall be released to mandatory supervision by order of the Board when the calendar time he has served plus any accrued good conduct time equal the maximum term to which he was sentenced."  *Id*.  According to *Franks*, the Court found, Arnold was not eligible for and could not be released on mandatory supervision because it was mathematically impossible to determine a release date on his life sentence.  *Id*. at 279 ("The same conclusion clearly applies to the 1977 version of the statute of the law, which is at issue here, because the relevant language is the same as the 1981 version.").

The Fifth Circuit has repeatedly followed *Franks* and upheld its decision in *Arnold*.  *See, e.g.*, *Stewart v. Cain*, 308 F.App'x 748, 749 (5th Cir. 2009) (unpublished) ("We determined that the TCCA's reasoning in *Franks* was determinative because the 1977 version of the mandatory supervision statute was substantively identical to the version of the law at issue in *Franks*.  . . . Stewart's assertions concerning his eligibility for mandatory supervision therefore is foreclosed by our decision in *Arnold*."); *Pohl v. Livingston*, 241 F.App'x 180, 181 (5th Cir. 2007) (unpublished) ("As the district court determined, Pohl's argument is foreclosed by *Arnold v. Cockrell*, 306 F.3d 277, 279 (5th Cir. 2002), which held that an inmate serving a life sentence is not eligible for release under the 1977 version of the Texas mandatory supervision statute and, thus, does not have a constitutionally protected interest in such release.").

6

Here, Armour was sentenced to death for one count of capital murder in December 1976. His death sentence was commuted to life in 1981.  As in *Franks* and *Arnold*—as well as the subsequent Fifth Circuit cases relying on *Arnold*—Armour is not entitled to release on mandatory supervision because he is serving a life sentence.  To the extent that Armour maintains that his life sentence should be treated as a sixty-year sentence for purposes of determining eligibility for release on mandatory supervision, the Texas Court of Criminal Appeals rejected this argument in *Franks*.  *See Wade v. Quarterman*, 2009 WL 2591246 *3 (S.D. Tex.—Houston, Aug. 19, 2009) ("To the extent petitioner claims that a life sentence 'is equivalent to sixty years' and that an inmate 'would be eligible for mandatory supervised release after serving twenty years,' this argument was rejected by both the Texas Court of Criminal Appeals in *Franks* and the Fifth Circuit in *Arnold*.") Because Armour is serving a life sentence, he is ineligible for mandatory supervision—even with his accrued good-time and work-time credits—and, as such, has no protected liberty interest.  This claim should be denied.

### B. Parole in Texas

Armour complains that he has been denied parole over twenty times even with his accrued credits.  Any loss or failure to apply good-time or work-time credits serves only to affect Armour's possible release date—insofar as Texas law provides that the sole purpose of these credits is to accelerate eligibility for release on parole or mandatory supervision.  *See* Tex. Gov. Code §498.003(a).

However, crucially, the Fifth Circuit has expressly held that there is no constitutional right to release on parole in the state of Texas.  *See Williams v. Dretke*, 306 Fed. App'x 164, 166 (5th Cir. 2009) ("Texas prisoners have 'no constitutional expectancy of parole' and, thus, any effect that the punishment had on Williams's parole eligibility could not support a constitutional claim.");

*Creel v. Keene*, 928 F.2d 707, 708-09 (5th Cir. 1991); *Allison v. Kyle*, 66 F.3d 71, 74 (5th Cir. 1995).  Accordingly, the loss or failure to apply credits that merely serve to accelerate a prisoner's **possible** release does not affect a constitutional right, but only the "mere hope" of release on parole.

But this hope is **not** protected by due process.  *See Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 7, 99 S.Ct. 2100 (1979) ("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."). Accordingly, because Armour is not eligible for release on mandatory supervision and there is no constitutional right to parole or early release, he does not have a protected liberty interest in his good time or earned work time.  *See Bagby v. Karriker*, 539 F. App'x 468, 469 (5th Cir. 2013) ("Because Bagby was ineligible for release on mandatory supervision, the district court did not err in finding that Bagby failed to state a due process claim with respect to the loss of his good-time credits.").  Armour does not have a constitutionally protected liberty interest in either release on mandatory supervision or release on parole; therefore, his habeas petition should be denied.

*C. Involuntary Servitude*

Finally, Armour reiterates that Texas prisoners are forced to work, without pay, in exchange for credits that can serve to achieve early release.  He complains that if prisoners do no work, they are subject to disciplinary proceedings.  To the extent that Armour complains that Texas prisoners are unconstitutionally required to work without compensation, this argument has been rejected many times.

Specifically, the Fifth Circuit has repeatedly rejected lawsuits based on the Thirteenth Amendment by Texas inmates who complain that they are not paid or compensated for their work product.  *See Loving v. Johnson*, 455 F.3d 562, 563 (5th Cir. 2006) ("Compelling an inmate to

work without pay does not violate the Constitution."); *Ali v. Johnson*, 259 F.3d 317, 318 (5th Cir. 2001) ("This appeal leads us to reiterate that inmates sentenced to incarceration cannot state a viable Thirteenth Amendment claim if the prison system requires them to work.").  Accordingly, because requiring a prisoner to work without pay is not a constitutional violation, any claim to the contrary is without merit.

**V. Conclusion**

Armour has not presented a constitutional violation.  While he has accrued a substantial number of credits while serving is life sentence, he is ineligible for mandatory supervision and has no protected liberty interest in parole.  His federal petition for a writ of habeas corpus should be denied.

<u>RECOMMENDATION</u>

Accordingly, it is recommended that the above-styled habeas petition be denied and that the case be dismissed with prejudice.

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court.  *Douglass v. United Servs. Auto Ass'n.*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

**So ORDERED and SIGNED this 29th day of April, 2019.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE